UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

ROBERT LINDSEY EUBANKS,

                 Plaintiff,                    Case No. 1:16-cv-1461

v.                                     Honorable Paul L. Maloney

CORIZON, INC. et al.,

                 Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Sperling. The Court will serve the complaint against Defendant Corizon, Inc.

## Discussion

I.    Factual allegations

Plaintiff Robert Lindsey Eubanks presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF), though the actions about which he complains occurred both at LCF and the Bellamy Creek Correctional Facility (IBC). Plaintiff sues the healthcare provider that contracts with the MDOC, Corizon, Inc., together with LCF Physician Assistant Kyle Sperling.

In his first set of allegations, Plaintiff alleges that, on September 6, 2014, he was taken to TLC Eyecare and Laser Centers in Jackson, Michigan for surgery on his right eye. On September 14, 2014, he received cataract surgery on his left eye at the same facility. On October 2, 2014, he woke up unable to see out of his right eye. Plaintiff informed the nurse of his problem at 6:15 a.m., and the nurse had the facility doctor look at Plaintiff's eye. The doctor determined that Plaintiff's eye was hemorrhaging, and Plaintiff was taken immediately to the emergency room at Coldwater Hospital. The ER doctor determined that Plaintiff's retina had separated from his eye and that Plaintiff would need immediate surgery or risk going permanently blind in his right eye. Plaintiff was returned to the prison, but he was taken a few hours later to an eye specialist in Coldwater to have emergency surgery. The specialist, however, refused to perform the surgery, because he did not want to be responsible for what someone else had done. He advised that Plaintiff be taken back to the person who performed the original surgery.

Plaintiff was taken to TLC in Jackson the following day.  There, the original surgeon, Dr. Purohit said that he could not perform the surgery "due to cloudiness in his eye lens."[1]  (Compl. ¶ 14, ECF Bi, 1, PageID.7.)  The doctor explained that a complicated procedure was necessary to do the surgery.  Dr. Purhohit therefore prescribed a treatment plan and sent it back to the prison. Plaintiff was returned to prison.

On October 6, 2014, Plaintiff received approval to return to the retinal specialist in Coldwater.  He was seen on October 13, 2014, but no surgery was done before October 16, 2014, when Plaintiff lost all vision in his right eye.  On October 13, 2014, Plaintiff also began to lose vision in his left eye.

Plaintiff filed a grievance on October 16, 2014.  The Step II grievance response indicated that a request had been made to have the cataract removed from the right eye on December 16, 2015 [sic], and that approval was given on that date.  It also indicated that, on December 17, 2015 [sic], a post-cataract-removal follow-up appointment was requested and authorized.  Plaintiff claims that the grievance contained falsified or inaccurate dates and that, although Plaintiff ultimately was treated, because of Defendants' dilatory actions, Plaintiff lost can no longer see at all.

In his next set of allegations, Plaintiff contends that he suffers from contractures in his fourth and fifth fingers and his thumb, which cause him extreme pain.  His prison medical provider has requested surgery, because Plaintiff's finger bones had started coming through the knuckles.  The request was denied, as was a second request for x-rays and surgery.  The doctor made a third request, which also was denied.  Plaintiff contends that Corizon is ignoring his severe pain.

---

[1] It is not clear from the complaint whether the cloudiness was in Petitioner's eye lens or in Dr. Purohit's eye lens.

In his third set of allegations, Plaintiff claims that he was seen on October 13, 2015, for his annual health review and a TB shot. The nurse examined Plaintiff's foot and scheduled him to see Defendant Sperling, because his right toe had become infected. Plaintiff saw Defendant Sperling on October 14, 2015. Sperling discussed a problem with Plaintiff's hemoglobin levels, refusing to examine Plaintiff's foot at that visit. Plaintiff later learned that health care had requested a specialist consultaion at the time of Plaintiff's complaint, and a second request was made on October 15, 2015. On November 10, 2015, Plaintiff was seen in health care and advised that an appointment was scheduled for a podiatrist on November 20, 2015. On November 20, Plaintiff had x-rays taken and was seen by a podiatrist. Plaintiff contends that he is regularly provided dressings for his foot ulcers, but he has not been given prescribed orthopedic footwear.

Plaintiff complains that Defendants have denied medically necessary treatment, in violation of the Eighth Amendment. Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.     <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial

-4-

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately

indifferent to the serious medical needs of a prisoner.  *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.  *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person."  *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

Plaintiff's only allegation against Defendant Sperling is that, on the date of a medical visit, Defendant Sperling declined to look at Plaintiff's allegedly infected toe.  Plaintiff acknowledges that Sperling was offering treatment on that date for a different medical condition and that health care had already requested a consultation with a podiatrist, which Plaintiff received a few weeks later.  Plaintiff also admits that he received dressings for his foot ulcers on a regular basis.  Plaintiff makes no allegation that Defendant Sperling either denied him medical care on another date or that his medical condition worsened because of Sperling's failure to look at his foot on October 14, 2014.  Under these circumstances, Plaintiff fails to allege that Defendant Sperling's actions

amounted to a denial of adequate medical care.  The Court therefore will dismiss Defendant Sperling from the action.

Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a claim against Defendant Corizon, Inc.  The Court therefore will order service on the complaint on Corizon, Inc.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Sperling will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendant Corizon, Inc..

An Order consistent with this Opinion will be entered.


Dated:  January 13, 2017                         /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge